[No. 39722-2-I. Division One. December 15, 1997.]

THE STATE OF WASHINGTON *on the relation of Cheryl M. Stout, et al., Respondent*, v. PHILLIP CHRISTOPHER STOUT, *Appellant*, DEBORAH A. SEATON, *Respondent*.

*Michael W. Loudon* of *The Public Advocate*, for appellant.
*Norm Maleng, Prosecuting Attorney*, and *Laura A. Banks, Deputy*, for respondents.

PER CURIAM —Phillip Stout moved to modify his child support obligations because of reduced income. The trial court granted his request, but ordered support in an amount greater than that calculated by Stout. The court denied his motion for reconsideration. Stout argues the court abused its discretion because the support order reduces his income below the established minimum level and is not supported by the evidence. We agree and reverse.

## FACTS

Stout and Deborah Seaton were divorced in 1989. The court ordered Stout to pay $400 per month for the support of their two children, both of whom live with Seaton. Stout is a siding contractor and owns a business called Stout Industries, Inc. In 1990, Stout suffered a neck and back injury from an auto accident. He underwent surgery and was incapacitated for nearly two years. Consequently, he experienced a reduced income. He earned $5,308 in 1992 and $5,868 in 1993. Stout's health improved in 1994 and his income increased to $15,980.

Because Seaton was receiving public aid, the State sought

modification of child support in 1994. The court increased Stout's monthly obligation to $547.

In 1994, Stout experienced increasing weakness in his arms, which made it difficult for him to work. He saw several different doctors in 1995. One doctor reported degeneration of Stout's spine, as well as sensory loss and absent reflexes. Two other doctors recommended Stout stop working. Stout continued to work, but his 1995 income dropped to $9,221. Stout Industries, Inc. reported gross sales of $28,761 for 1995 and a net income of $3,829. Stout reported a personal income of $501 for the first quarter of 1996.

Stout filed a petition for support modification based on financial hardship. The trial court considered the petition on the pleadings. Stout based his argument on 1995 and 1996 earnings, and contended his standard support amount should be $219.

Seaton disputed that calculation, accusing Stout of underestimating his income through manipulation of his corporation. Counsel asserted that all of the income earned by Stout Industries, Inc. in 1995 should be attributed to Stout.

The court granted Stout's motion for modification. But the court disagreed with Stout's income calculation. The court found Stout's annual income was $15,000, based on corporation balance sheets, profit and loss statements, and tax returns. The court explained, "I simply extrapolated that from the P&L's and the balance sheets for '95 and looked at the income reported for '94. And I believe that [$]15,000 per annum is the best I can do under these numbers as reflective of this man's earning capacity—or in earnings in fact."

The court computed Stout's net monthly income as $1,031.60, and Seaton's net monthly income as $1,706.64. Applying the standard calculations, the court ordered Stout to pay monthly child support of $317.43. The court rejected Stout's allegation that he was physically disabled.

Stout objected. He alleged the court's order would reduce his monthly income below the minimum level of $800 as determined by the Department of Social and Health Ser-

vices (DSHS). He also stated the court's income calculation was not supported by the evidence, which showed his average annual income was only about $9,000.

The court explained it derived its figure by taking "whatever income information was in front of me and concluded that his average earnings were, over the last several years, averaged at [$]15,000 per year[.]" The court acknowledged the standard calculation would reduce Stout's monthly income below the minimum. Nevertheless, the court denied Stout's request for a deviation from the standard support obligation, finding the "needs of the children" called for the standard payment.

Stout filed a motion to reconsider. Between trial and reconsideration, Stout underwent another surgery to relieve pain. His doctor found Stout to be totally disabled as of June 1996. The doctor conditionally estimated Stout would be able to resume work in about mid-November 1996.

The court denied the motion. The court found there were no facts to support imputing income to either party. The court, again relying on the "needs of the children," found no basis to deviate from the standard calculation. Finally, the court found that while Stout demonstrated a need for payment of attorney fees, Seaton did not have the ability to pay.

## DECISION

### Reducing income below need standard

A parent's child support obligation shall not reduce his net income below the need standard established by DSHS.[1] The need standard effective September 1, 1995, was $800

---

[1]RCW 26.19.065(2) provides, in pertinent part, as follows:

**Income below six hundred dollars.** When combined monthly net income is less than six hundred dollars, a support order of not less than twenty-five dollars per child per month shall be entered for each parent. A parent's support obligation shall not reduce his or her net income below the need standard for one person established pursuant to RCW 74.04.770, except for the mandatory minimum payment of twenty-five dollars per child per month as required in

for one person. DSHS Division of Child Support Manual, 2.2 Enforcement Procedures, App. 2, Need Standard Effective 9/1/95. Stout argues the statute creates a mandatory limit on an obligor's child support obligation and that the court abused its discretion by failing to adjust its support order so that Stout's income would not fall below the minimum.

 Stout is partially correct. This court recently held that consideration of the minimum need standard is mandatory in all child support calculations.[2] However, a trial court has the discretion to deviate from the need standard for the reasons stated in RCW 26.19.075.[3] In exercising its discretion, the court must enter written findings and conclusions stating its reasons for deviation or denial of deviation.[4]

 █ In this case, the court acknowledged the standard calculation reduced Stout's income below the $800 standard of need, but concluded that the "needs of the children" precluded deviation from the monthly standard calculation of $317.43. It is unclear from the record what the court meant by "needs of the children." A court may deviate from the standard calculation after considering certain special needs of the children, such as those necessary to address disabilities or medical, educational, or psychological needs.[5] During argument, Seaton's counsel referred to a portion of Seaton's 1995 declaration wherein she stated that one of the children required psychiatric services. But counsel did not explain whether the child still needed the care, for how long the need was anticipated, or how much the treatment cost. Nor is the 1995 declaration

this section or in cases where the court finds reasons for deviation under section 32 of this act. [Section 32 was vetoed by the governor]. This section shall not be construed to require monthly substantiation of income.

[2]*In re Marriage of McDaniel*, 87 Wn. App. 827, 832, 947 P.2d 1225 (1997).

[3]*McDaniel*, 87 Wn. App. at 831.

[4]*McDaniel*, 87 Wn. App. at 832-33.

[5]RCW 26.19.075(1)(c)(iii), (iv).

part of the record.[6] Moreover, the court did not refer to this special need or to any other facts to support its reliance on the vague notion of the "needs of the children." Absent some special need, the court's reason would be insufficient to justify forcing Stout below the monthly minimum income level, because the Legislature presumably considered a child's basic needs when it established a "floor" below which an obligor's income could not fall.

We will seldom change a trial court's decision in a dissolution proceeding, but will do so where there has been an abuse of discretion.[7] Because of the state of the record, we are unable to determine whether the trial court abused its discretion by refusing to deviate from the standard calculation to account for Stout's minimum income needs. Because we are remanding for reconsideration of the support order, we direct the trial court to enter written findings and conclusions if its order reduces Stout's monthly income below the minimum needs standard.

Sufficiency of the evidence

In a modification proceeding, a trial court is required to set forth written findings of fact, which must be supported by substantial evidence and justify the court's conclusion.[8] Substantial evidence is that which would persuade a fair-minded and rational person of the truth of a stated premise.[9] Stout argues the trial court's calculation of his income is not supported by the evidence.

Stout provided the trial court with extensive financial data to support his request for modification. His personal

---

[6]Seaton did not appear at the hearing. Her attorney explained she was unable to prepare an updated financial declaration because she could not locate Seaton. As a result, Seaton's attorney based her arguments on a financial declaration Seaton filed in 1995. Seaton has not filed a brief in this court in response to Stout's brief. Nor has the 1995 declaration been made part of the appellate record. Stout attached copies of Seaton's 1994 and 1995 income tax forms to his trial memorandum, which is part of the record.

[7]*In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990).

[8]*In re Marriage of Brockopp*, 78 Wn. App. 441, 446, 898 P.2d 849 (1995).

[9]*In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807, *review denied*, 115 Wn.2d 1013 (1990).

income tax returns indicate an average adjusted gross income of about $10,000. Stout's income for the first quarter of 1996 was $501. Corporate tax forms for Stout Industries, Inc. show gross receipts averaging about $30,000, and taxable income about $4,000.

In the face of this financial data, the trial court's $15,000 annual income estimate is inexplicable, especially where it found no basis upon which to impute income. At the hearing, Stout's counsel questioned the court's calculation, pointing out that in only one year since 1992 did Stout earn more than $10,000. The court simply responded, "Right. Well, I'm going to leave it at that number . . . I'm not going to change that."

■ A court exercises its discretion in an untenable and manifestly unreasonable way when it essentially guesses at an income amount.[10] Here there was ample reliable evidence for the court to set an accurate income estimate, but the court ignored it. In addition, Stout presented credible evidence that his medical condition had deteriorated to the point two doctors recommended he not work. He also informed the court he would be undergoing surgery shortly after his hearing, which he did between his hearing and his motion to reconsider.

■ Because it does not comport with the evidence, the trial court's estimate of Stout's income is unreasonable and constitutes an abuse of discretion. We reverse the court's order and remand for recalculation of the support amount to conform to the evidence.[11] If the court again orders Stout to pay the standard support obligation, it must enter written findings and conclusions in support of its deviation from the mandatory prohibition against reducing an obligor's income below the monthly minimum.

---

[10]*In re Marriage of Bucklin*, 70 Wn. App. 837, 841, 855 P.2d 1197 (1993) (court abused its discretion by "essentially guessing at" father's income, where it had explicitly found it had no verification of income).

[11]*In re Marriage of Dortch*, 59 Wn. App. 773, 780, 801 P.2d 279 (1990) (trial court's support order remanded for recalculation where record failed to explain why court's calculation of mother's income was inconsistent with evidence).

### Attorney fees

Stout contends the court erred by refusing to award him attorney fees at trial because Seaton had the ability to pay his fees and because her intransigence increased his fees. Stout also requests fees on appeal.

A court may award costs and attorney fees in a modification proceeding after considering the parties' financial resources.[12] The court must balance the needs of the requesting party against the other party's ability to pay. An award of attorney fees is discretionary and should not be reversed absent an abuse of discretion.[13]

Seaton reported an average annual income of $22,000 in 1994 and 1995. At the hearing, however, counsel asserted Seaton had suffered a reduction of income and described her financial situation as "totally desperate."

The court set Seaton's net monthly income at $1,706.64, which was consistent with her tax returns. Nevertheless, the court found Seaton unable to pay Stout's fees. The record lends no support to the court's finding. The finding is also internally inconsistent with the court's own estimate of Seaton's income. Therefore, the court's decision is untenable and constitutes an abuse of discretion.

In addition, the court should have awarded fees based on Seaton's intransigence. Seaton failed to timely respond to Stout's petition for support modification, requiring Stout to file a motion for default. Further, Seaton received two trial continuances, one to obtain discovery—

---

[12]RCW 26.09.140 provides:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, . . . .

Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs.

[13]*In re Marriage of Trichak*, 72 Wn. App. 21, 26, 863 P.2d 585 (1993).

which was not then sought—and one because counsel could not locate Seaton to discuss a possible settlement. In addition, because Seaton had neither answered interrogatories nor produced requested documents, Stout filed a motion to compel discovery. These developments, combined with her unexplained absence at trial, raise the inference that Seaton chose at an early stage not to participate in the proceedings.

"An important consideration apart from the relative abilities of the two spouses to pay is the extent to which one spouse's intransigence caused the spouse seeking the award to require additional legal services."[14] Stout has established that Seaton's failure to cooperate caused his attorney to engage in otherwise needless activity.[15] Therefore, we reverse the trial court's denial of Stout's request for attorney fees and remand for reconsideration of the request.

Stout also requests fees on appeal. In determining whether to award such fees, this court examines the arguable merit of the issues raised on appeal and the financial resources of the parties.[16] Stout has raised meritorious issues on appeal. He has served and filed an updated financial declaration as required by RAP 18.1(c). Seaton has not. Stout has demonstrated the need for payment of fees on appeal. Consistent with the foregoing analysis, Stout is awarded fees and costs accrued for this appeal. We order

---

[14]*In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989).

[15]*See, e.g., In re Marriage of Foley*, 84 Wn. App. 839, 846, 930 P.2d 929 (1997) (father's numerous frivolous motions, refusal to appear for his deposition and to read correspondence from mother's attorney constitutes intransigence); *In re Marriage of Greenlee*, 65 Wn. App. 703, 708, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002 (1992) ("foot-dragging" and obstructionist tactics that force opposing party to seek legal remedies justifies fees award based on intransigence); *In re Marriage of Harshman*, 18 Wn. App. 116, 128, 567 P.2d 667 (1977) (forcing wife to resort to contempt proceedings to enforce maintenance and support proper basis for awarding attorney fees based on intransigence).

[16]*Griffin*, 114 Wn.2d at 779-80.

him to file in this court an affidavit detailing the expenses incurred and services performed by counsel on appeal.[17]

The trial court's order is reversed and remanded for reconsideration consistent with our holdings.